Matter of Police Benevolent Assn. of N.Y. State Troopers v New York State Exec. Dept. (2004 NY Slip Op 50050(U))

[*1]

Matter of Police Benevolent Assn. of N.Y. State Troopers v New York State Exec. Dept.

2004 NY Slip Op 50050(U)

Decided on January 20, 2004

Supreme Court, Albany County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 20, 2004

Supreme Court, Albany County
Matter of The POLICE BENEVOLENT ASSOCIATION OF THE NEW YORK STATE TROOPERS INC, and DANIEL M. DE FEDERICIS, as president of the Police Benevolent Association of the New York State Troopers, Petitioners,
against
NEW YORK STATE EXECUTIVE DEPARTMENT, OFFICE OF EMPLOYEE RELATIONS; NEW YORK STATE POLICE and STATE OF NEW YORK, Respondents.
Index No. 5725-03

Michael P. Ravalli, Esq.
Gleason, Dunn, Walsh & O'Shea
Attorney for Petitioner
102 Hackett Boulevard
Albany, NY 12209
Jeffrey P. Mans, AAG
Attorney for Respondent
Office of the Attorney General
The Capitol
Albany, NY 12224

Louis C. Benza, J.
BENZA, J.:
Petitioners seek an order compelling arbitration of a grievance filed by one of the members of respondent Police Benevolent Association of the New York State Troopers.
Petitioners are the Police Benevolent Association of the New York State Troopers (hereinafter PBA) - the collective bargaining agent for the commissioned and non-commissioned officers for the New York State Police, and its president. Respondents are the State the employer of the officers for the State Police, and the New York State Executive Department, Office of Employee Relations (hereinafter GOER). PBA and the State entered into a Collective Bargaining Agreement (hereinafter CBA) for the officers of the State Police for the term April 1991 through April 1995. Upon expiration of the CBA, the parties entered into a Memorandum of Understanding from April 1995 through March 1999. Pursuant to Civil Service Law § 209-a.1 (e), the CBA, as extended and modified by the MOU, remains in effect. The MOU provided that [*2]any awards by arbitration panels were not agreements within the meaning of the Public Employment Fair Employment Act. Pursuant to the mechanism provided in the Public Employment Fair Employment Act (Civil Service Law § 209 [4]), public arbitration panels issued separate awards for compensation issues for the officer's unit for the periods April 1, 1995 through March 2003. Included in the awards issued during the 1995 through 2001 period, was a physical fitness incentive program. This program designated funds for bonuses based on participation in an annual physical fitness program. Participation in the 2002 program was scheduled for June 25, 2002 through August 23, 2002.
Gary Segrue is a member of the PBA and an officer in the State Police. From April 2002 through October 2002, Segrue was suspended with pay. During his suspension, Segrue submitted paperwork to participate in the physical fitness program, however, the State Police did not schedule him for participation. After his return from suspension, Segrue again requested to participate in the program. In November 2002, he completed the test and received a score of 83%. Segrue, however, was denied payment for participation in the 2002 program.
Segrue filed a grievance on February 11, 2003. The CBA provides for a four-step grievance procedure with separate procedure for Step 3 and Step 4 based on whether the grievance is contractual or non-contractual in nature. Contractual grievances not satisfactorily resolved at Step 3 are eligible for arbitration, while unresolved non-contractual grievances are not. By mutual agreement, Segrue's grievance was heard directly at Step 3. The superintendent's designee determined that the grievance was non-contractual in nature because it did not involve "a disagreement over the interpretation or application of a term of the CBA", the grievance was not timely and, in any event, there was no violation because officers on suspension are not deemed to be working and, thus, are not eligible for the fitness test. Thereafter, PBA requested that the grievance be heard at arbitration. GOER determined that the grievance was a non-contractual grievance and rejected the demand for arbitration. Petitioners thereafter brought the instant proceeding pursuant to CPLR article 75 to compel arbitration. Petitioners argue that based on the broad language of the arbitration clause of the CBA, whether Segrue's grievance concerning the physical fitness incentive program is a contractual grievance is for the arbitrator to determine. In opposition, respondents argue that petitioners' application fails to state a claim because the physical fitness program is not contained in the CBA or MOU and, thus, Segue's grievance does not concern an interpretation or application of any term of the CBA. As such, respondents contend the petition should be dismissed.
It is well settled that in determining whether a grievance is arbitrable, a Court must consider whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance, and then examine the CBA to determine if the parties have agreed to arbitrate the dispute at issue (Matter of City of Johnstown v Johnstown Police Benevolent Association, 99 NY2d 273, 278). Here, the parties do not disagree that the first prong has been satisfied. Rather, they disagree as to whether the parties have agreed to arbitrate this particular dispute. The Court determines that they did not.
Step 4 of the grievance procedure provides that:

(Contract Grievance) In the event that the grievance has not been satisfactorily resolved at Step 3, then the President of the PBA shall have the exclusive right to refer to arbitration any [*3]unresolved contract grievance concerning the interpretation or application of any term of this Agreement by serving written notices on the Director of Employee Relations not later than 10 working days following receipt of the Step 3 determination. Such notice shall identify the provisions of the Agreement, the member or members involved, and include a copy of the grievance.
Here, the physical fitness program was not contained in the CBA but, rather, was the result of an arbitration award as provided for in the Act. The MOU specifically, however, excludes such awards from being considered "agreements" within the meaning of the Act. As the physical fitness program was not part of the CBA and, pursuant to the MOU, is not considered an agreement under the Act, the Court determines that Segue's grievance concerning the physical fitness program does not concern an interpretation or application of any term of the CBA.
Accordingly, the Court determines that the matter is not arbitrable and dismisses petitioner's application. All papers including this Decision and Order are returned to respondents' attorney. The signing of this Decision and Order shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of this rule with
regard to filing, entry and Notice of Entry.
January 20, 2004Hon. Louis C. Benza
Papers Considered
1.Notice of Petition dated September 8, 2003
2.Verified Petition dated September 8, 2003; exhibits A-F annexed
3.Answer; exhibit 1; A-C annexed
4.Affidavit of Michael P. Ravalli dated November 17, 2003; exhibits A-E annexed

Decision Date: January 20, 2004